# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kenneth Brian Young,                                    Civil No. 05-454  (RHK/SRN)

       Plaintiff,

v.

                                   <u>REPORT & RECOMMENDATION</u>

Minnesota Department of Corrections at
Rush City, Sergeants Selk and Coolidge,
Warden Feneis, Associate Wardens Zawacki and
Cosgrove, and Frederick Bernard Tyus,
Richard Joseph Martin,
and Edward Wayne Whitefeather,

       Defendants.

---

Gregory S. Bachmeier on behalf of Plaintiff

Richard L. Varco, Jr. on behalf of Defendants MCF-RC, Selk, Coolidge, Feneis, Zawacki and

Cosgrove

Richard Joseph Martin, pro se

Edward Wayne Whitefeather, pro se

---

Pending before the undersigned United States Magistrate Judge is the Motion to Dismiss filed

by Defendants Minnesota Department of Corrections Rush City facility (MCF-RC), Coolidge and Selk

(Doc. No. 36); Defendant Martin's Motion to Submit Evidence (Doc. No. 49), Plaintiff's Second

Motion to Amend/Correct the Complaint (Doc. No. 58) and Second Motion to Dismiss filed by

Defendants Zawacki, Minnesota Department of Corrections, Cosgrove, Coolidge, Feneis and Selk

(Doc. No. 64).  This Court has jurisdiction over these motions pursuant to 28 U.S.C. § 636 and

District of Minnesota Local Rule 72.1.

## I.   BACKGROUND

On August 10, 2004, Plaintiff, an inmate at MCF-RC, shared a cell with a fellow inmate, Defendant Edward Whitefeather. On that day, Plaintiff asked Sergeant Coolidge of MCF-RC, if either he or Whitefeather could be moved to a different room.  (Am. Complaint at ¶¶ 12, 13; Def.'s Mem. Supp. of Second Mot. Dismiss at 3.)  According to Sergeant Coolidge, he told Plaintiff how to initiate the process for changing rooms by submitting a kite, or prison message form, through the appropriate channels. (First Coolidge Aff. at ¶ 4.)  According to Coolidge, Plaintiff provided no reason for requesting a room change.  Id.

The following day, August 11, 2004, Plaintiff and a fellow inmate, Baryon Brown, approached Sergeant Selk of MCF-RC.  (Am. Complaint at ¶ 15.)  According to Defendant Selk, Plaintiff stated that he and Whitefeather were not getting along, but did not explain why, nor did he state that this was an emergency situation.  (First Selk Aff. at ¶ 3.)  Plaintiff, however, alleges that inmate Brown informed Selk that Plaintiff should be moved because of racial tension between Plaintiff and Whitefeather and that Whitefeather had threatened Plaintiff with grave bodily harm.  (Am. Complaint at ¶ 15.)  Neither Plaintiff nor Defendant Whitefeather were relocated at that time.

Later that day, Plaintiff alleges that he was attacked by Defendant Whitefeather who received assistance from two other inmates, Frederick Tyus and Richard Martin, in carrying out the attack. (Am. Complaint at  ¶¶ 17-18.)  According to Plaintiff, Whitefeather heated in a MCF-RC microwave a liquid concoction of honey, hair gel, tea, and water that he then poured on Plaintiff's face, neck, and chest.  (Id.)  After pouring the liquid on Plaintiff, Whitefeather then repeatedly hit Plaintiff with a rock

that had been placed in a sock.  (Id.)  Plaintiff claims he suffered serious physical injuries, severe

emotional and psychological damage, and significant medical expenses as a result of the attack.  (Id. ¶¶

20-22.)

Plaintiff alleges the following in the Amended Complaint: (1)  the inmate defendants assaulted

and battered him; (2) Sergeants Selk and Coolidge "failed to diffuse or investigate [Plaintiff's] imminent

attack, provide any other possible alternatives, offer any meaningful protection, and timely transfer"

Plaintiff or Whitefeather, "despite Plaintiff's persistent requests" and in violation of his "constitutional

right to be free from violent attacks by fellow inmates"; (3) Defendants failed to prevent Plaintiff's

attackers from using the microwave to superheat the liquid poured on him and accessing the rock used

to beat him also in violation of Plaintiff's "constitutional right to be free from violent attacks by fellow

inmates"; and (4) Warden Feneis and Associate Wardens Zawacki and Cosgrove were negligent and

deliberately indifferent to the danger presented by the microwave in the common area and the ease with

which other inmates could bring in rocks, also in violation of Plaintiff's "constitutional right to be free

from violent attacks by fellow inmates."  (Id. ¶¶ 25-38.)  Among other relief, Plaintiff seeks

compensatory damages, costs, fees and expenses pursuant to 42 U.S.C. § 1983.  (Id. ¶ 5.)

## II.      PROCEDURAL POSTURE

Defendants Selk, Coolidge and the Minnesota Department of Corrections at Rush City

("MCF-RC") move to dismiss the complaint against them, or alternatively for the entry of summary

judgment in their favor.  They argue that they are entitled to dismissal for the following reasons: (1)

pursuant to the Eleventh Amendment, this Court lacks subject matter jurisdiction to consider damage

claims against MCF-RC and against Selk and Coolidge for actions taken in their official capacities; (2)

3

Defendants MCF-RC, Selk and Coolidge cannot be sued for prospective injunctive relief in their official capacities because Plaintiff has not asserted a substantial immediate threat of future harm; (3) neither MCF-RC, Selk nor Coolidge are "persons" for purposes of 42 U.S.C. § 1983; (4) neither Selk nor Coolidge were deliberately indifferent to Plaintiff's safety; and (5) Selk and Coolidge are entitled to qualified immunity.

Plaintiff argues that the Complaint gave Defendants Selk and Coolidge notice that they were sued in both their official and individual capacities, although the Plaintiff did not explicitly use the word "individual" or "personal" in the Complaint.[1]  Nevertheless, after Defendants raised the argument in their motion to dismiss, Plaintiff moved to amend the Amended Complaint to explicitly state that Defendants Selk and Coolidge were sued in their personal (i.e., individual) capacities.    Defendants oppose the motion to amend.

Shortly after the hearing on the original motion to dismiss, Plaintiff served Defendant with the Amended Complaint. Because Defendants had not been served with the Amended Complaint at the time of the hearing on their original motion to dismiss, allegations contained within the Amended Complaint, and additional named defendants, prompted the filing of the second motion to dismiss/motion for summary judgment.  Defendants' second motion to dismiss/motion for summary judgment seeks the dismissal of all of the State Defendants – MCF-RC, Selk, Coolidge, Feneis, Zawacki and Cosgrove – on essentially the same grounds as the first motion to dismiss/summary

---

[1]Unless otherwise stated, "Defendants" refers to the State Defendants, as opposed to inmate defendants Tyus, Martin and Whitefeather.  The motions that are the subject of this Report & Recommendation were almost entirely filed by the state defendants, with the exception of a short motion filed by Defendant Martin, which will be discussed separately herein.

judgment motion.

Finally, inmate Defendant Martin filed a motion to submit evidence in the form of two exhibits: (A) Plaintiff's interview with the Minnesota Department of Corrections Office of Special Investigations; and (b) a memorandum from an investigator working with Public Defender Jesse Johnson.

## III.   DISCUSSION

### A.      Motion to Amend the Amended Complaint

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  Moreover, "denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001).  Even if the adverse party would suffer some prejudice if the motion to amend were granted, the anticipated prejudice must be balanced against the hardship to the moving party if the motion is denied.  Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981).  Leave to amend may be denied if the amendment would not be able to withstand a motion to dismiss, see e.g., Weimer v. Amen, 870 F.2d 1400, 1407 (8th Cir. 1989), because "[t]he liberal amendment rules of [Rule] 15(a) do not require that courts indulge in futile gestures."  Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983).   Ultimately, the decision to grant or not grant leave to amend is entrusted to the sound discretion of the trial court.  Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).

Plaintiff argues that its motion to amend should be granted, as the proposed amended language merely states with greater specificity that the named State Defendants are being sued in their individual

capacities.[2]  The initial Complaint stated that Selk and Coolidge were natural persons residing in the State of Minnesota.  (Complaint, ¶ 2.)  The Amended Complaint stated that Selk, Coolidge, Feneis, Zawacki and Cosgrove were sued in their capacity as residents of the State of Minnesota and as officers of the Minnesota Department of Corrections.  (Am. Complaint, ¶ 2.)  Plaintiff argues that Defendants have not been prejudiced by Plaintiff's pleadings, as all of Plaintiff's pleadings, deposition testimony and other discovery clearly have reflected Plaintiff's intent to sue these defendants in both their individual and official capacities.

Defendants argue that they did not have notice that the named State Defendants were being sued in both their individual and official capacities.  For example, in Defendants' first motion to dismiss, Selk and Coolidge – at that time, the only named State Defendants – argued that they were being sued in their official capacities only and advanced arguments based on that assumption. Following oral argument on Defendants' first motion to dismiss, Plaintiff served and filed the instant motion to amend the complaint.

Defendants argue that Plaintiff's motion should be denied because Plaintiff failed to attach a copy of the amended pleading to the motion, as required by Local Rule 15.1.  Substantively, Defendants argue that the motion to amend should be denied because it is futile.  Defendants argue that the allegations of deliberate indifference against the named State Defendants are meritless.

First, as to Plaintiff's non-compliance with Local Rule 15.1, the Court is not inclined to rule on this matter on a procedural technicality, particularly given the Federal Rules' directive that leave to

---

[2]Although the briefing on the matter focused on Defendants Selk and Coolidge, Plaintiff's Proposed Amended Complaint clarifies that all of the State Defendants – Selk, Coolidge, Feneis, Zawacki and Cosgrove – are sued in their personal capacities.

amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15.

Turning to the substantive issue, in Egerdahl v. Hibbing Community College, 72 F.3d 615, 619-20 (8th Cir. 1995), the plaintiff there challenged the district court's ruling that her § 1981, § 1983 and equal protection claims were barred by the Eleventh Amendment because she failed to sue the applicable defendants in their personal capacities.[3]  Egerdahl argued that because the caption and body of her complaint referred to the defendants by name rather than by official position, her complaint provided the defendants with ample notice that she was suing them in their personal capacities.  Id. Plaintiff also argued that in response to the defendants' motion to dismiss her  § 1981 and § 1983 claims, she asked the district court to construe her amended complaint as seeking damages from the defendants in their personal capacities.  Id. at 620.  The Eighth Circuit rejected Plaintiff's arguments, stating that under Nix, Egerdahl was required to clearly state her intent to sue the defendants in their individual capacities.  Id.

Egerdahl also argued that the district court erred in not permitting her to correct her omission by amending her complaint a second time.  Id.  The Eighth Circuit stated that Egerdahl had such an opportunity when she amended her complaint the first time.  In fact, six days before she amended her complaint, the defendants filed a motion to dismiss which informed Egerdahl of the personal capacity issue.  Thus, in reaching its decision to affirm the lower court's ruling, the Eighth Circuit also pointed to the plaintiff's lack of diligence in timely moving to amend her complaint.  Id.

Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997), involved a similar situation, except in Murphy, the plaintiff promptly filed a motion to amend to assert personal capacity claims shortly after

---

[3]The Court addresses the Eleventh Amendment issue in detail, *infra*.

the individual defendants filed for summary judgment and raised an Eleventh Amendment challenge to

Plaintiff's damages claims. Without ruling on the motion to amend, the district court denied the

individual defendants summary judgment on Eleventh Amendment grounds because 'defendants cannot

seriously argue that they had no notice that they were sued in [their] individual capacities.' Id. at 754-

55.    The court found that Murphy's prompt motion to amend the complaint upon receiving the

defendants' summary judgment motion was dispositive:  "Given the district court's conclusion that

defendants had sufficient notice they were being sued in their personal capacities, we are confident that

the district court would grant Murphy leave to amend the complaint to state personal-capacity equal

protection claims if we remanded for consideration of that issue."  Id.    Furthermore, citing the liberality

of Fed. R. Civ. P. 15(a) regarding amendments, the Eighth Circuit deemed the complaint amended.  Id.


Here, within four days of oral arguments on Defendants' first motion to dismiss, Plaintiff served

and filed the motion to amend the complaint (Doc. No. 58).  The Court finds that this situation is

distinguishable from Egerdahl, in which the plaintiff had ample notice of the issue prior to amending the

complaint for the first time.  Here, Plaintiff first was granted permission to amend the Complaint on

September 14, 2005.  Four months later, Defendants filed their first motion to dismiss on January 27,

2006.  The Court is less persuaded by Plaintiff's argument that the Complaint and Amended Complaint

provided notice that Selk, Coolidge, Feneis, Zawacki and Cosgrove were being sued in their personal

capacities based on language describing them as "natural persons" and "residents of the State of

Minnesota."  However, Plaintiff arguably provided notice by making a claim for punitive damages.

Kirk v. Erickson, 989 F.2d 505 (Table) (8th Cir. 1993), 1993 WL 53167, *1 (citing Shabazz v.

Coughlin, 852 F.2d 697, 700 (2d Cir. 1988) (prayer for punitive damages shows suit is against officer

in individual capacity)).  In addition, Defendants Selk and Coolidge responded as though they were

sued in their individual capacities by arguing that they were entitled to dismissal based on qualified

immunity. See Kirk, 1993 WL 53167 at*1 (citing Shockley v. Jones, 823 F.2d 1068, 1071 (7th Cir.

1987) (by raising qualified immunity defense, agents show they believe suit is against them in their

individual capacities)).  In any event, Plaintiff promptly moved to amend the complaint when alerted to

the issue, therefore, pursuant to Murphy,  Plaintiff's motion to amend should be granted.

## B.      Summary Judgment

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the

complaint as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  All reasonable inferences

from the complaint must be drawn in favor of the nonmoving party.  Hafley v. Lohman, 90 F.3d 264,

266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997).  Dismissal is appropriate only if "it appears

beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief."

Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).  "Although it is to be liberally construed, a *pro se*

complaint must contain specific facts supporting its conclusions."  Martin v. Sargent, 780 F.2d 1334,

1337 (8th Cir. 1985).

> Rule 12(b)(6) itself provides that when matters outside the pleadings
> are presented and not excluded by the court, the motion shall be
> treated as one for summary judgment and disposed of as provided in
> Rule 56.  Our court has interpreted the phrase "matters outside the
> pleadings" to include "any written or oral evidence in support of or in
> opposition to the pleading that provides some substantiation for and
> does not merely reiterate what is said in the pleadings."

Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 948 (8th Cir. 1999), cert. denied, 528 U.S. 1117 (2000) (citation omitted).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.

A non-moving party cannot rely on the "mere existence of *some* alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party shows–"that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case," id. at 325, "Rule 56(e) [] requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. Thus, a non-moving party cannot simply rely on assertions made in the pleadings to avoid summary judgment. E.g., Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56(c) requires the entry of summary judgment against

10

such party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); accord Reed v. Woodruff County, 7 F.3d 808, 810 (8th Cir. 1993).  All evidence will be viewed in the light most favorable to the nonmoving party, e.g., Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980), and *pro se* pleadings are more liberally construed than those drafted by an attorney.  See Smith v. St. Bernards Regional Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).

In their papers in support of and in opposition to Defendants' Motions to Dismiss, the parties submitted materials outside the pleadings which the Court intends to consider.  Under Fed. R. Civ. P. 12(b)(6), these submissions convert Defendants' motions to dismiss into motions for summary judgment to be treated as provided under Fed. R. Civ. P. 56.  The Court now bases this Report & Recommendation upon all the materials provided by the parties.

Defendants argue that they are entitled to summary judgment because the Court lacks subject matter jurisdiction to consider damages claims against the State Defendants for actions taken in their official capacities.  Defendants further argue that Plaintiff's punitive damages claims are barred by Defendants' immunity from suit for monetary damages.  In addition, Defendants assert that they can only be sued in their official capacities for injunctive relief.  They contend that such relief is unavailable to Plaintiff as he has failed to allege a substantial immediate threat of future harm.  Also, Defendants argue that neither MCF-RC nor any of the individual Defendants in their official capacities are "persons" for purposes of 42 U.S.C. § 1983.  In addition, Defendants Selk, Coolidge, Feneis, Zawacki and Cosgrove argue that they were not deliberately indifferent to Plaintiff's safety.

### 1.    Subject Matter Jurisdiction

Under the Eleventh Amendment, actions for damages against the state in federal court are

11

barred, absent consent or congressional enactment.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985);

<u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 456 (1976); <u>Egerdahl</u>, 72 F.3d at 619.  In addition, a suit for

damages is prohibited "even though individual officials are nominal defendants," because such a suit is

construed as a suit against the state.  <u>Edelman v. Jordan</u>, 415 U.S. 651, 653 (1974).  "While

Minnesota has waived its sovereign immunity to some extent in Minn.Stat. § 3.736 [Minnesota Tort

Claims Act], the language of subdivision 2 of that section does not clearly show that Minnesota

intended to waive any claim of sovereign immunity in federal court." <u>DeGidio v. Perpich,</u>  612 F.Supp.

1383, 1389 (D.Minn.1985) (finding that the Eleventh Amendment barred plaintiffs' § 1983 and pendent

state claims against the defendants sued in their official capacities).

     Moreover, in addition to the Eleventh Amendment, § 1983 damage claims are barred against

state entities and officials acting in their official capacities, as they are not "persons" for § 1983

purposes.  <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989) ("Obviously, state

officials literally are persons. But a suit against a state official in his or her official capacity is not a suit

against the official but rather is a suit against the official's office.").

     A state agent, however, may be sued in his official capacity if the Plaintiff merely seeks

injunctive or prospective relief for a legally cognizable claim.  <u>Id.</u>; <u>Nix v. Norman</u>, 879 F.2d 429, 432

(8th Cir. 1989).  Declaratory and injunctive relief are available only if the plaintiff asserts a substantial

immediate threat that he will again be harmed.  <u>See</u> <u>Martin v. Sargent</u>, 780 F.2d 1334, 1336 (8th Cir.

1985).  Here, Plaintiff has not made such an assertion and, in fact, he is no longer confined at MCF-

RC.  (First Cosgrove Aff. at ¶ 2.)  Because Plaintiff's claim for injunctive relief is moot, the Court

recommends that summary judgment be granted in favor of MCF-RC and in favor of Defendants Selk,

Coolidge, Feneis, Zawacki and Cosgrove in their official capacities.

### 2.    Punitive Damages

In addition to compensatory damages and declaratory and injunctive relief, Plaintiff seeks

punitive damages.  (Am. Complaint at ¶¶ 5 and B.)   Punitive damages are not available from a

governmental entity under § 1983, but are available from an official personally.  See Kentucky v.

Graham, 473 U.S. at 166-67; Cox v. University of Arkansas, 2006 WL 1185380, *5 (E.D. Ark. May

3, 2006) ("The Eleventh Amendment does not bar compensatory damages or punitive damages against

actors sued in their individual capacities.").   Thus, to the extent that Plaintiff seeks punitive damages

from MCF-RC, or damages from the named State Defendants acting in their official capacities, such

damages are unavailable.  However, Plaintiff's punitive damages claims brought against the named State

Defendants in their individual capacities remain, to the extent that those defendants remain in this case.

### 3.    Deliberate Indifference

Plaintiff asserts that Defendants Selk and Coolidge were deliberately indifferent to his requests

for a room transfer, in violation of his right to be free from violent attacks by fellow inmates.  (Am.

Complaint at ¶ 36) In addition, he argues that Defendants Feneis, Zawacki and Cosgrove were

deliberately indifferent to the danger posed by the microwave in the common area and the ease with

which inmates could bring in rocks from outdoors.

The Eighth Amendment to the United States Constitution, which proscribes cruel and unusual

punishment, "does not mandate comfortable prisons" but imposes a duty on prison officials "to provide

humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v.

Chapman, 452 U.S. 337, 349 (1981)). Pursuant to this duty, prison officials must take reasonable

steps to protect inmates from violence and assault by fellow inmates, because being subjected to violent assault is not " 'part of the penalty that criminal offenders [must] pay for their offenses.' " Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir.1996) (quoting Rhodes, 452 U.S. at 347 ). To prevail on a claim of failure to protect, a plaintiff must show: (1) that the conditions in which he was incarcerated constituted a substantial risk to him of serious harm; and (2) that the defendants knew of that risk and disregarded it.  Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 644 (8th Cir. 1996).

### a.      Defendants Feneis, Zawacki and Cosgrove

Plaintiff's allegation with respect to the warden and associate wardens, Feneis, Zawacki and Cosgrove, is that they were deliberately indifferent to the danger presented by the microwave in the common area and to the ease with which inmates could bring in rocks.

Neither the microwave nor the rocks, on their own, presented a substantial risk of serious harm. Defendant Whitefeather's alleged use of these items posed a substantial risk of harm to Plaintiff – not the rocks or microwave themselves.  The microwave and the rocks were not inherently dangerous, in contrast to conditions which are typically deemed to violate the Eighth Amendment.  See e.g., Estelle v. Gamble, 429 U.S. 97 (1976) (grossly inadequate medical care); Johnson-El v. Schoemehl, 878 F.2d 1043 (8th Cir. 1989) (unconstitutional living conditions).

Additionally, Plaintiff must demonstrate that Feneis, Zawacki and Cosgrove knew of the risk of harm.  As to the substantial risk of harm posed by Defendant Whitefeather, Plaintiff does not allege that these three defendants had prior knowledge of any threats coming from Whitefeather, or of Plaintiff's desire to change rooms.  In addition, there is no showing of the warden defendants' knowledge of the substantial risk of harm posed by inmate microwave use or rocks, discussed in greater detail, *infra*,

14

regarding Plaintiff's allegations of failure to supervise and train.  Accordingly, the Court recommends

that summary judgment be granted to Feneis, Zawacki and Cosgrove on Plaintiff's claims of deliberate

indifference.

### b.    Selk and Coolidge

Plaintiff's allegation with respect to Defendants Selk and Coolidge is that they were deliberately

indifferent to him by failing to timely transfer Plaintiff, despite his allegedly persistent requests.  (Am.

Complaint at § 33.)  Plaintiff contends that due to their negligent and deliberate indifference to his

requests for a transfer, he was assaulted by Defendant Whitefeather.  (Am. Complaint at § 34.)

There are several genuine issues of material fact in dispute as to whether Plaintiff reported

Whitefeather's threats to Defendants Selk and Coolidge and requested a cell transfer.  Plaintiff alleges

in his Amended Complaint that he requested a cell transfer from both Selk and Coolidge (Am.

Complaint at §§ 13; 15).

Plaintiff testified at his deposition that he told Coolidge that Defendant Whitefeather had

threatened him, that it was an urgent matter and he asked to be transferred to a new room immediately.

(Bachmaier Aff., Ex. B, Young Dep. at 48.)  Sergeant Coolidge, however, testified that he told Plaintiff

to submit a kite for a room change request.  (Bachmaier Aff., Ex. G, Coolidge Dep. at 13.)

Furthermore, Sergeant Coolidge attests that at no time did he believe that Whitefeather would assault

Young or pose any danger to his safety.  (First Coolidge Aff. at § 3.)  Moreover, according to Sergeant

Coolidge, he received no information indicating that Whitefeather posed any threat to Young, nor did

Young indicate why he wished to change rooms.  Sergeant Coolidge indicated that based on procedure

and training, if he received information from an inmate that a roommate had threatened the inmate's

15

safety, he would draft an incident report and transmit it to his supervisor. Id. at ¶ 4.  He did not do so

here because he avers that he had no reason to believe that Plaintiff's safety was endangered.  Id.

A similar factual dispute exists with respect to Plaintiff and Sergeant Selk.  Plaintiff testified at

his deposition that he made clear to Sergeant Selk that he urgently needed a room transfer to get away

from Defendant Whitefeather.  (Bachmaier Aff., Ex. B, Young Dep. at 66-67.)  According to Plaintiff,

Sergeant Selk asked if Plaintiff felt threatened and he replied in the affirmative.  Id.

In contrast, Sergeant Selk testified that when Plaintiff approached him about his concerns

regarding Whitefeather, Sergeant Selk asked if it was an emergency issue, and Plaintiff stated that it

was not.  (Bachmeier Aff., Ex. H, Selk Dep. at 11.)  Sergeant Selk also avers that at no time prior to

the assault did he believe that Whitefeather would either assault Plaintiff or pose a danger to his safety.

(First Selk Aff. at ¶ 2.)  Sergeant Selk stated that he did not draft an incident report regarding his

conversation with Plaintiff on or about August 11, 2004, because based on Plaintiff's information, he

did not believe that Whitefeather posed a substantial risk of serious harm to Plaintiff.  Id. at ¶ 4.)

Based on the contested facts above, summary judgment is inappropriate.  The Court therefore

recommends the denial of the summary judgment motion of Defendants Selk and Coolidge in their

personal capacities.

### 4.    § 1983 Negligent Failure to Train or Supervise Staff

Plaintiff alleges that Defendants Feneis, Zawacki, Cosgrove and MCF-RC failed to properly

train and supervise staff.  In particular, Plaintiff claims that Feneis, Zawacki and Cosgrove: (1) failed to

train and supervise Selk and Coolidge, and perhaps other prison staff, with respect to the dangers of a

microwave oven; (2) failed to train and supervise regarding the proper response to inmate complaints

and safety concerns when told that one inmate posed a serious threat to the safety of another; and (3)

failed to train and supervise regarding the smuggling of rocks into the prison's living units. (Am.

Complaint at ¶¶ 39-43.) As MCF-RC has immunity from suit pursuant to the Eleventh Amendment,

the Court addresses Plaintiff's § 1983 claims with respect to Defendants Feneis, Zawacki and

Cosgrove.

As an initial matter, Plaintiff alleges that Defendants' supervisory deficiencies violated his rights

under the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendment Rights. (Am. Complaint at

¶¶ 40, 43.) Plaintiff's allegations, however, only support an Eighth Amendment claim, which involves

the infliction of cruel and unusual punishment. U.S. Const. amend. VIII.   As noted, the Supreme Court

has held that the Eighth Amendment requires prison officials to take reasonable measures to guarantee

the safety of the inmates [and] ⋯ to protect prisoners from violence at the hands of other prisoners.

<u>Farmer</u>, 511 U.S. at  832–33 (1994) (quotations omitted). The Court therefore confines its analysis to

Eighth Amendment jurisprudence.

Failure to supervise/failure to train claims must be supported by specific facts demonstrating

that a named defendant was responsible for, but failed to perform training and supervision:

> It is well settled that " '[r]espondeat superior is not a basis for liability under 42 U.S.C.
> § 1983.' " <u>Kulow v. Nix</u>, 28 F.3d 855, 858 (8th Cir.1994) (quoting <u>Smith v.</u>
> <u>Marcantonio</u>, 910 F.2d 500, 502 (8th Cir.1990)). In particular, this Court has noted
> that "a general responsibility for supervising the operations of a prison is insufficient to
> establish the personal involvement required to support liability." <u>Camberos v. Branstad</u>,
> 73 F.3d 174, 176 (8th Cir.1995).

<u>Keeper v. King</u>, 130 F.3d 1309, 1314 (8th Cir. 1997).  Instead, for a plaintiff to establish individual

liability for a supervisor, the plaintiff must show that the supervisor was deliberately indifferent to or

tacitly authorized the offending acts.  <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1078 (8th Cir. 1996).  "[T]his requires a showing that the supervisor had noticed that the training procedures and supervision were inadequate and likely to result in a constitutional violation."  <u>Id.</u>         Defendants propounded interrogatories to Plaintiff seeking information supporting the failure to supervise/train allegations in the Amended Complaint.  (Pl.'s Resp. to Defs.' 2/14/06 Interrogs., Ex. A. to Varco Aff. to Second Mem. Supp. Mot. Dismiss.)  Plaintiff's answers do not show that Feneis, Zawacki or Cosgrove knew or had any reason to believe that rocks were easily and freely circulating in the prison compound. There is no showing that a lack of training or supervision contributed to Whitefeather's misuse of the microwave. Plaintiff does not demonstrate that MCF-RC staff failed to receive training on inmate separation, or that they were not expected to follow applicable policies when one inmate posed a serious threat to another.

    Furthermore, Plaintiff has not alleged or submitted facts demonstrating that Feneis, Zawacki and Cosgrove noticed that the training procedures and supervision on inmate safety and contraband were inadequate and likely to result in a constitutional violation.  Plaintiff has submitted no evidence demonstrating a repeated pattern of inmate upon inmate attacks.  Plaintiff's answers to the interrogatories state that prior to the attack against Plaintiff, inmates had used heated liquids for attacks on three occasions, that other MCF facilities had developed policies and/or practices to restrict microwave access to inmates and that the policy and procedures associated with kite forms was insufficient to protect Plaintiff from harm.  <u>Id.</u>   As to the microwave use, Plaintiff has submitted the deposition testimony of Defendants Selk and Coolidge describing three earlier incidents in which MCF-RC officers were attacked with heated liquids, causing burns, (Bachmaier Aff. to Pl.'s Mem. Opp. to

Defs.' Second Mot. Dismiss, Ex. H, Selk Dep. at 28, 32; Ex. G, Coolidge Dep. at 40), and one

inmate-upon- inmate assault involving hot water, thought it is unclear whether a microwave was used in

that incident. (Id., Ex. N, MCF-RC Discipline Action Forms.)   This offer of proof does not

demonstrate a pattern of inmate-upon-inmate assaults involving the microwave.  More importantly,

Plaintiff has not demonstrated facts sufficient to show that the prison's policies themselves were

inherently ineffective such that defendants could have foreseen Whitefeather's attack on Plaintiff.

Instead, Defendant proffers that MCF-RC had procedures whereby an inmate posing a serious

threat to the safety of another inmate would not be allowed to share a room with such a person.

(Cosgrove Second Aff. at Exs. D and E.)  Selk and Coolidge understood that if they received such

information, they were to immediately report it to their supervisors.  (Selk Second Aff. at ¶¶ 3-4;

Coolidge Second Aff. at ¶ 5; Bachmeier Aff., Ex. G. at  ¶¶ 15-16; Ex. H at  ¶¶ 17, 19-21.)  Prison

policies prohibited inmates from assaulting one another.  (Cosgrove Second Aff. at  ¶ 6.)  Contraband

was not allowed and staff were trained to and did search inmates and their living quarters for

contraband.  Id. at  ¶¶ 8, 10.  A system of discipline was used to deter violent behavior.  Id. at  ¶¶ 9

and 10.

Here the facts are not in dispute:  Plaintiff has neither alleged, nor has he shown that the

supervisors had noticed that training procedures and supervision were inadequate and likely to result in

a constitutional violation.  Accordingly, as a matter of law, summary judgment should be granted to

Feneis, Zawacki and Cosgrove on Plaintiff's § 1983 claims.

On a related matter, Defendants seek summary judgment as to Plaintiff's state law negligence

claim (Am. Complaint at §§ 44-47), noting that this claim is only before this Court based on

supplemental jurisdiction.  Citing 28 U.S.C. § 1367(c)(3), Defendants contend that it is appropriate for

a court to decline to exercise supplemental jurisdiction when a plaintiff's federal law claims are no

longer viable.

Pursuant to 28 U.S.C.A. § 1367, district courts may decline to exercise supplemental

jurisdiction over a claim if the district court has dismissed all claims over which it has original

jurisdiction.  Here, the Court does not recommend the dismissal of all of Plaintiff's claims, therefore, the

Court will address Plaintiff's state law negligence claim on the merits.

Minnesota courts have defined negligence as the failure to exercise "due or ordinary care."  See

Seim v. Garavalia, 306 N.W.2d 806, 810 (Minn. 1981).  "Due or ordinary care" does not require

"perfect conduct," Klingbeil v. Truesdell, 98 N.W.2d 134, 139 (1959), but rather, what an ordinarily

prudent person would have done under the same or similar circumstances.  See Flom v. Flom, 291

N.W.2d 914, 916 (Minn. 1989).

Here, the facts do not demonstrate the failure of Defendants Feneis, Zawacki and Cosgrove to

exercise due or ordinary care.   As noted above,  Plaintiff's answers do not show that Feneis, Zawacki

or Cosgrove knew or had any reason to believe that rocks were easily and freely circulating in the

prison compound. There is no showing that a lack of training or supervision contributed to

Whitefeather's misuse of the microwave.  Plaintiff does not demonstrate that MCF-RC staff failed to

receive training on inmate separation, or that they were not expected to follow applicable policies when

one inmate posed a serious threat to another.   There are no genuine issues of material fact in dispute as

to these defendants.  For these reasons, and those noted above in this court's analysis of Plaintiff's §

1983 claim against these three defendants, the Court recommends the dismissal of Plaintiff's state law

negligence claim as well.

### 5.    Qualified Immunity

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (citation omitted).   Rather than a mere defense to liability, qualified immunity is an immunity from suit.  Id.  When a plaintiff claims that an officer has violated a constitutional right, "the requisites of a qualified immunity defense must be considered in proper sequence."  Id.   Qualified immunity involves a two-step inquiry.  Viewed in the light most favorable to the party asserting injury, the threshold question is whether the alleged facts show that the officer's conduct violated a constitutional right.  Id. at 201.  If no constitutional right would have been violated were the allegations established, then qualified immunity is established.  If, however, the facts support a constitutional violation, the next sequential step is to ask whether the right was clearly established.  Id. This inquiry is fact-specific:  "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.

Officials have qualified immunity if: (1) their actions do not violate clearly established statutory or constitutional law; (2) they did not know or have reason to know their actions would violate statutory or constitutional law; and (3) they reasonably believed their actions to be consistent with the rights that allegedly were violated.  Anderson v. Creighton, 483 U.S. 635, 638-41 (1987).  Qualified immunity is available only in circumstances where reasonable public officials in the same situation would have followed the same course of action or where officers of reasonable competence could disagree on the appropriate course of action to follow.  Malley v. Briggs, 475 U.S. 335, 341 (1986).

First, as to Feneis, Zawacki and Cosgrove, this Court has concluded that their actions do not violate a clearly established constitutional law, namely the Eighth Amendment. The Court has recommended that summary judgment be granted for MCF-RC on Eleventh Amendment grounds, therefore, the Court analyzes qualified immunity as it relates to Defendants Selk and Coolidge.

Based on the disputed issues of material fact discussed *infra*, qualified immunity is not available on Defendants' summary judgment motion. Because of the disputed facts as to whether Plaintiff advised Defendants Selk and Coolidge of the threat to his personal safety, this Court cannot say, as a matter of law that (1) the actions of Selk and Coolidge did not violate clearly established statutory or constitutional law; (2) they did not know or have reason to know their actions would violate statutory or constitutional law; and (3) they reasonably believed their actions to be consistent with the rights that allegedly were violated. Accordingly, the Court recommends the denial of summary judgment as to Defendants Selk and Coolidge on qualified immunity grounds.

### C.    Defendant Martin's Motion to Submit Evidence

Defendant Martin, an inmate, moves for permission to submit evidence in this matter, specifically, the following: (A) Plaintiff's interview with the Minnesota Department of Corrections Office of Special Investigations; and (b) a memorandum from an investigator working with Public Defender Jesse Johnson. Defendant Martin believes that the information reflects upon the credibility of the Plaintiff and another inmate Defendant, Tyus. The Court acknowledges the receipt of the material. To that extent, Defendant Martin's motion is granted.

Therefore, based upon the foregoing,

22

**IT IS HEREBY RECOMMENDED that:**

1.	The Motion to Dismiss, or, in the alternative, Motion for Summary Judgment, filed by

	Defendants Minnesota Department of Corrections, Coolidge and Selk (Doc. No. 36)

	be **GRANTED, IN PART**, and **DENIED, IN PART**.  Summary judgment should

	be granted in favor of  Defendant Minnesota Department of Corrections and

	Defendants Selk and Coolidge in their official capacities and denied as to Defendants

	Selk and Coolidge in their personal capacities;

2.	Defendant Martin's Motion to Submit Evidence (Doc. No. 49) be **GRANTED**;

3.	Plaintiff's Second Motion to Amend/Correct the Complaint (Doc. No. 58) be

	**GRANTED**;

4.	The Motion to Dismiss, or, in the alternative, Motion for Summary Judgment, filed by

	Defendants Zawacki, Minnesota Department of Corrections, Cosgrove, Coolidge,

	Feneis and Selk (Doc. No. 64) be **GRANTED, IN PART**, and **DENIED, IN

	PART**.  Summary judgment should be granted in favor of Defendant Minnesota

	Department of Corrections and Defendants Feneis, Zawacki, Cosgrove and to

	Defendants Selk and Coolidge in their official capacities.  Summary judgment should be

	denied as to Defendants Selk and Coolidge in their personal capacities.

DATED:	August 8, 2006

							s/Susan Richard Nelson
							SUSAN RICHARD NELSON
							United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by **August 22, 2006** after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.